IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Baltimore

| | |
|---|---|
| In re: | * |
| Zilla Electric, LLC | * |
| | *   Case No. 25-16314 MMH |
| | *   Chapter 11 (Subchapter V) |
| Debtor. | * |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**DEBTOR'S CHAPTER 11, SUBCHAPTER V PLAN**

Zilla Electric, LLC, the above-captioned debtor and debtor-in-possession (the "Debtor"), proposes the following Plan under § 1190 and § 1191 of Title 11 of the United States Code (the "Bankruptcy Code"). A brief history of the Debtor's business operations is attached hereto as **Appendix A**.

All creditors and equity security holders should refer to Articles III through VII of this Plan for information regarding the precise treatment of their claims or interests. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.) This Plan is a proposal by the Debtor and subject to court approval after opportunity for objections and a hearing. Please refer to Scheduling Order __ [Dkt. __] for important information regarding Plan voting and objection deadlines.**

Article I.  Source of Payments

During the term of this Plan, the Debtor shall submit the disposable income (or value of such disposable income) necessary for the performance of this plan directly to the creditors, pursuant to the payment schedule set forth in **Appendix B**. In the event the Debtor is unable to propose a consensual plan to the Court, the Debtor shall pay its disposable income to the Subchapter V Trustee (the "Trustee") and shall pay the Trustee the sums set forth herein.

Article II.  Plan Term

The term of this Plan begins on the date of confirmation of this Plan and ends on the 36th month subsequent to that date.

Article III.  General Distributions Under Plan

The value of the property to be distributed under the Plan during the term of the Plan is not less than the Debtor's projected disposable income for that same period.  Unsecured creditors holding allowed claims will receive distributions, which the Debtor has valued at approximately seventy-eight ($0.78) cents on the dollar. The Plan also provides for the payment of secured, administrative, and priority claims in accordance with the Bankruptcy Code.

Article IV.  Classification and Treatment of Claims and Interests

1. The Debtor has classified all claims and interests in accordance with §§ 1122, 1123, and 1190 of the Bankruptcy Code.  A chart detailing each class of claims or interests under the Plan, and the Debtor's proposed treatment for each is attached hereto as **Appendix B**.

2. All parties claiming administrative expense priority (including unsecured claims) pursuant to § 507(a)(2) of the Bankruptcy Code but not already treated as such under this plan, shall file an application to approve their respective asserted administrative claim priority status no later than thirty (30) days after the Effective Date.  Any claim that is granted administrative expense priority shall receive the treatment set forth in **Appendix B**.

3. <u>Disputed Claims</u>:

    a. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order and, either:

        i. A proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

        ii. No proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent or unliquidated.

    b. <u>Delay of Distribution on a Disputed Claim</u>:  No distribution will be made on a disputed claim unless the claim is allowed by a final non-appealable order.

    c. <u>Settlement of Disputed Claims</u>: The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Federal Rule of Bankruptcy Procedure 9019.

### Article V.  Payments to Creditors Under Plan

Unless otherwise provided in this Plan or indicated on Appendix B, funds received by the Trustee or otherwise included in this Plan but not specifically disbursed to a secured creditor under this Plan, shall be used to pay the following claims in the priority indicated:

Administrative Claims shall be paid first, which includes the amounts due to the Subchapter V Trustee, Angela Shortall, and to Debtor's Counsel, Geri Lyons Chase.

The Class 1 Creditors, Maurice Electrical Supply and Rexel, both suppliers will be paid following the Administrative Claims. The Suppliers are critical vendors for the Debtor and must be paid as soon as possible in order to maintain relationships with them as suppliers of necessary materials.

The Class 2 Creditor, Chesapeake Energy Solutions, is a judgment creditor, whose claim was disputed by the Debtor. A Motion to Alter or Amend Judgment was filed in the Circuit Court for Anne Arundel County and the ruling on that motion has not occurred due to the imposition of the automatic stay. The Debtor proposes to pay the sum of $220,000, in monthly payments, commencing in month eleven of the Plan.

The Class 3 Creditors, Pipe Funding, Fundbox and Verizon, will be paid in full upon completion of all other payments under the Plan, in months thirty-five and thirty-six.

There are no priority creditors as defined in 11 U.S.C. §507, other than those administrative claims referenced herein, nor are there any secured creditors.

### Article VI.  Secured Claims Generally

The term "secured claim" as used in this Plan shall be consistent with § 506 of the Bankruptcy Code, and shall mean an allowed claim in an amount equal to the present value of the applicable creditor's interest in the Debtor's interest in the property, or in the amount subject to setoff, as may be established by this Plan, the Confirmation Order, or separate Order of the Court.

### Article VII.  Secured Claims Being Modified Under § 1190

None.

Article VIII.  Trustee Compensation

The Trustee shall be paid for services rendered in this Chapter 11 case an administrative and/or priority claim under § 507 of the Bankruptcy Code and pursuant to Article IV of this Plan, as set forth on **Appendix B**.  All fees and expenses requested by the Trustee, including those on Appendix B, are subject to review and approval by the Court under §§ 329 and 330 of the Bankruptcy Code.

Article IX.  Attorney Compensation

The Debtor's attorney, Geri Lyons Chase, 2007 Tidewater Colony Drive, Suite 2B, Annapolis, Maryland 21401, shall be paid for the services rendered to the Debtor herein as an administrative and/or priority claim under § 507 of the Bankruptcy Code and pursuant to Article IV of this Plan, as set forth on **Appendix B**.  All fees and expenses requested by the Debtor's attorney, including those on Appendix B, are subject to review and approval by the Court under §§ 329 and 330 of the Bankruptcy Code.

Article X.  Liquidation Analysis

Attached hereto as **Appendix D** is the Liquidation Analysis required by § 1190(1)(B) of the Bankruptcy Code and the Local Rules of this Court.

Article XI.  Debtor's Disposable Income and Plan Funding

An exhibit describing (i) the Debtor's projected disposable income as defined by § 1191(d) of the Bankruptcy Code, (ii) the details supporting and the assumptions under which said projections were made, (iii) the source and value of funds and assets available for distribution under the Plan, and (iv) a summary of payments under this Plan is attached as **Appendix E**.

Article XII.  Executory Contracts and Unexpired Leases

12.01 Assumption.  Pursuant to § 365 of the Bankruptcy Code, the Debtor assumes each executory contract and unexpired lease listed on **Appendix F**, effective upon the effective date of this Plan, as provided in Article XVI (the Effective Date").

12.02. Rejection.  The Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases not (i) expressly listed on **Appendix F** and assumed under

this Plan or (ii) previously assumed, and if applicable assigned, before the Effective Date; or (iii) that are the subject of a pending motion to assume (and if applicable, assign).  A proof of claim arising from the rejection of an executory contract or an unexpired lease under the Plan must be filed with the Court and served on the Trustee and the Debtor no later than 30 days after the Effective Date.

### Article XIII.  Property Vests in Debtor Free and Clear

Except as provided in this Plan or the order confirming this Plan, all of the property of the estate, pursuant to §§ 1141(b) and 1141(c) of the Bankruptcy Code, vests in the Debtor as of the Effective Date free and clear of any claim or interest of any creditor provided for by this Plan.

### Article XIV.  Confirmed Plan Binding on Debtor and Creditors

Except as provided in §§ 1141 or 1192 of the Bankruptcy Code, as applicable, the provisions of this Plan shall, upon confirmation, bind the Debtor, each and every creditor of this estate and each party in interest, whether or not the claim of such creditor or party is provided for by the Plan and whether or not such creditor or party has accepted or has rejected the Plan.

### Article XV.  Discharge

Discharge.  If the plan is confirmed pursuant to §1191(a), upon the confirmation date of this Plan, and subject to the occurrence of the Effective Date, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Bankruptcy Code, but the Debtor will not be discharged of any debt: (i) imposed by this Plan; (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Federal Rule of Bankruptcy Procedure 4007(c) of the; or (iii) of a kind specified in § 1141(d)(6)(B).

Discharge.  If the plan is confirmed pursuant to §1191(b), upon the payment by the Debtor of the sums required under this Plan and application to the Court, the Debtor shall be eligible to receive a discharge under § 1192 of the Bankruptcy Code.

### Article XVI.  Miscellaneous

16.01 Definitions and Rules of Construction.  The definitions and rules of construction set forth in § 101 and § 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan, and they are supplemented by the following definitions: [Insert additional definitions if necessary].

16.02 Effective Date of Plan.  The effective date of this Plan is the first business day following the date that is fourteen days after the entry of the order of confirmation.  If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay of the confirmation order expires or is otherwise terminated.

16.03 Severability.  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

16.04 Binding Effect.  The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of, the successors or assigns of such entity.

16.05 Appendices.  The Appendices attached to the Plan are incorporated into the Plan by reference as if the same were fully rewritten herein.

16.06 Captions.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

16.07 Controlling Effect.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Maryland govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

## Article XVII.  Plan Proposed in Good Faith

The Debtor represents that it is within Debtor's ability to carry out this Plan, and the Plan is submitted in good faith.

## Article XVIII.  Retention of Jurisdiction

The Court shall retain jurisdiction of this Chapter 11 case to issue orders necessary to the consummation of the Plan; to determine the allowance of compensation and expenses of professionals; to determine any and all adversary proceedings, applications and contested matters; to determine issues or disputes relating to the assumption of executory contracts and any claims related thereto; to determine disputes as to classification or allowance of claims or interests; to issue such orders in aid of execution of this Plan to the extent authorized by § 1142 of the Bankruptcy Code; to enforce the provisions of the Plan; to recover all assets of the Debtor and property of the Debtor's estate, wherever located; to resolve any dispute between or among any of the parties to this bankruptcy proceeding, to determine other such matters as may be set forth in a confirmation order or as may be authorized under the provisions of the Bankruptcy Code; to enter a final decree closing the bankruptcy case; and to correct any defect, cure any omission or reconcile any inconsistency

in this Plan or confirmation order, and to take any action or make any ruling as may be necessary to carry out the purpose and intent of this Plan.

## Article XIX.  Remedy upon Non-Payment

In the event the Debtor fails to make a monthly payment for two or more consecutive months, or fails to make the quarterly payment of the excess disposable income as set forth in Article III, the creditors may, fifteen days after filing a Notice of Default request conversion of this case to a case under Chapter 7.  The Debtor shall have the opportunity to cure any default until such time as the Court orders this case converted after default.

DATED: October 9, 2025            Zilla Electric, LLC

                                  By Counsel


                                  /s/ Geri Lyons Chase, Esq.
                                  Geri Lyons Chase, Bar number 09275
                                  Law Office of Geri Lyons Chase
                                  2007 Tidewater Colony Drive, Suite 2B
                                  Annapolis MD 21401
                                  410-573-9004
                                  gchase@glchaselaw.com

                                  Attorney for Debtor, Zilla Electric, LLC

**Appendix A**
(Debtor's Business History)

A. Nature and History of the Debtor's Business or Commercial Activities:

The Debtor, Zilla Electric, LLC, is a Maryland limited liability company, formed on February 29, 2024, by Kyle Guinta. The Debtor is an electrical contractor, working primarily as a subcontractor in the custom home industry. The Debtor works with a small number of general contractors and performs work in Maryland and in the District of Columbia.

Prior to the formation of Zilla Electric, LLC, Mr. Guinta worked for Chesapeake Energy Solutions, and after leaving Chesapeake, Chesapeake sued both Zilla, and Mr. Guinta individually, for breach of contract and obtained a judgment in the amount of $283,728.00.

B. Ownership Structure of the Debtor's Business or Commercial Activities:

The Debtor, Zilla Electric, LLC, is 100% owned by Kyle Guinta

C. Description of the Performance of the Debtor's Business or Commercial Activities in the Three Years Before the Bankruptcy Filing and the Events Leading to the Debtor's Bankruptcy Filing:

The Debtor, Zilla Electric, LLC, has been in operation since February of 2024. The business was operating profitably until it became embroiled in the litigation with Chesapeake Energy Solutions. Upon obtaining its judgment in June of 2025, Chesapeake immediately began attempts to collect the judgment and sent numerous writs of garnishment to the general contractors. The Debtor filed this case to stop the garnishment proceedings and to reorganize its affairs.

D. Other Pertinent or Miscellaneous Information

None.

## Appendix B
(Classification and Treatment of
Claims and Interests)

| Class No. | Description of Claims or Interests in Class | Total Amount of Claims or Interests in Class | Proposed Treatment Under Plan (including whether impaired) | Estimated Percentage Recovery[1] |
|---|---|---|---|---|
| | [Administrative Expense Priority Claims] | $ 20,000.00 | Paid monthly at the rate of $2000 per month for two months, commencing on the effective date, and $4000 for month for each month thereafter until paid in full. | 100% |
| Class 1 | Claims of Suppliers, Maurice and Rexel, both Critical Vendors to the operation of the Debtor | $ 33,500.00 | Paid monthly at the rate of $5,500 per month, for four months, commencing the seventh month of the plan, after completion of payment of the administrative claims, and adjusting in the eleventh to the rate of $4,500 per month until fully paid. | 100% |
| Class 2 | Claim of Chesapeake Energy Solutions | $300,000.00 | Paid monthly at the rate of $1,000 per month, in months eleven and twelve, and continuing from the thirteenth month of the plan at $10,000.00 per month until fully paid.  Total payment to be $220,000.00 | 73.3% |
| Class 3 | Claims of General Unsecured Creditors | $ 25,657.00 | Paid in two equal payments in months thirty-five and thirty-six of the plan. | 100% |

---

[1] The amount of claims is based upon either claims filed, or upon the scheduled amounts in Schedule F.

**Appendix D**
Liquidation Analysis

| Item | Market Value and Basis for Valuation | Lien or Interest | Equity for Estate |
|---|---|---|---|
| Inventory | Recent cost | none | $   3000.00 |
| Storage Shelves | Recent cost | none | $     500.00 |
| Computers | Recent cost | none | $  4,000.00 |
| Accounts Receivable[1] | | none | $110,333.83 |
| Checking Account balance[2] | | none | $ 18,056.47 |
| TOTAL AVAILABLE | | | $135,890.30 |

---

[1] Amount on October 9, 2025
[2] Amount on October 9, 2025

**<u>Appendix E-1</u>**
(Projected Disposable Income)

| DEBTOR: Zilla Electric, LLC | CASE NUMBER: 25-16314 | | | | | | | | | | | | Year 1 | Year 2 | Year 3 | Plan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Month / Year | Effective Month | Month 2 | Month 3 | Month 4 | Month 5 | Month 6 | Month 7 | Month 8 | Month 9 | Month 10 | Month 11 | Month 12 | TOTAL | TOTAL | TOTAL | TOTAL |
| **BEGINNING CASH BALANCE** | $ 1,000 | 183 | 741 | 1,299 | 1,857 | 2,415 | 2,973 | 2,031 | 1,089 | 147 | 205 | 263 | 1,000 | 321 | 36,571 | 1,000 |
| **CASH RECEIPTS** | | | | | | | | | | | | | | | | |
| Gross Income | 136,000 | 146,000 | 146,000 | 156,000 | 156,000 | 156,000 | 156,000 | 156,000 | 156,000 | 162,000 | 162,000 | 162,000 | 1,850,000 | 2,250,000 | 2,350,000 | 6,450,000 |
| Other Income | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Misc income | | | | | | | | | | | | | | | | |
| Other | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Other | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Other | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Other | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Total Cash Receipts** | $ 136,000 | 146,000 | 146,000 | 156,000 | 156,000 | 156,000 | 156,000 | 156,000 | 156,000 | 162,000 | 162,000 | 162,000 | 1,850,000 | 2,250,000 | 2,350,000 | 6,450,000 |
| **CASH DISBURSEMENTS** | | | | | | | | | | | | | | | | |
| Materials | $ 25,000 | 30,000 | 30,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 40,000 | 40,000 | 40,000 | 415,000 | 600,000 | 600,000 | 1,615,000 |
| Other Secured Loans | 2,240 | 2,240 | 2,240 | 2,240 | 2,240 | 2,240 | 2,240 | 2,240 | 2,240 | 2,240 | 2,240 | 2,240 | 26,880 | 30,000 | 30,000 | 86,880 |
| Auto Repair Expense | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 | 6,500 | 7,200 | 19,700 |
| Auto Expense Other Gas | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 19,200 | 21,000 | 25,000 | 65,200 |
| Payroll and Payroll expenses | 96,975 | 99,500 | 99,500 | 102,500 | 102,500 | 102,500 | 102,500 | 102,500 | 102,500 | 102,500 | 102,500 | 102,500 | 1,218,475 | 1,296,000 | 1,396,000 | 3,910,475 |
| Warehouse Rent | 900 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 11,900 | 13,000 | 13,000 | 37,900 |
| Supplies | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,200 | 1,350 | 1,500 | 4,050 |
| Insurance | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 21,000 | 30,000 | 36,000 | 87,000 |
| Health Insuranc | 1,727 | 1,727 | 1,727 | 1,727 | 1,727 | 1,727 | 1,727 | 1,727 | 1,727 | 1,727 | 1,727 | 1,727 | 20,724 | 30,000 | 33,000 | 83,724 |
| Utilities/Telephone | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 5,400 | 6,000 | 6,000 | 17,400 |
| Legal Fees | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Tools | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 | 7,200 | 8,000 | 21,200 |
| Operating Reserve | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 | 12,000 | 12,000 | 36,000 |
| Owner Draws | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Other   Parking and Tolls | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 18,000 | 20,000 | 22,000 | 60,000 |
| Other   Software | 575 | 575 | 575 | 575 | 575 | 575 | 575 | 575 | 575 | 575 | 575 | 575 | 6,900 | 7,200 | 7,200 | 21,300 |
| Other   Training - Apprentices | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 | 12,000 | 12,000 | 36,000 |
| **Total Cash Disbursements** | $ 135,817 | 143,442 | 143,442 | 151,442 | 151,442 | 151,442 | 151,442 | 151,442 | 151,442 | 156,442 | 156,442 | 156,442 | 1,800,679 | 2,092,250 | 2,208,900 | 6,101,829 |
| **CASH FLOW FOR PERIOD** | 183 | 2,558 | 2,558 | 4,558 | 4,558 | 4,558 | 4,558 | 4,558 | 4,558 | 5,558 | 5,558 | 5,558 | 49,321 | 157,750 | 141,100 | 348,171 |
| **ENDING CASH BALANCE** before PLAN PMTs | $ 1,183 | 2,741 | 3,299 | 5,857 | 6,415 | 6,973 | 7,531 | 6,589 | 5,647 | 5,705 | 5,763 | 5,821 | 50,321 | 158,071 | 177,671 | 349,171 |
| **Plan payments:** | | | | | | | | | | | | | | | | |
| Admin claims (Counsel, Trustee, Accountant, etc) | 1,000 | 2,000 | 2,000 | 4,000 | 4,000 | 4,000 | 0 | 0 | 0 | 0 | 0 | 0 | 17,000 | 0 | 0 | 17,000 |
| Class 1 - Suppliers | 0 | 0 | 0 | 0 | 0 | 0 | 5,500 | 5,500 | 5,500 | 5,500 | 4,500 | 4,500 | 31,000 | 1,500 | 0 | 32,500 |
| Class 2 - Chesapeake | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1,000 | 1,000 | 2,000 | 120,000 | 98,000 | 220,000 | |
| Class 3 - GUC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 25,657 | 25,657 |
| **Total Plan Payments** | 1,000 | 2,000 | 2,000 | 4,000 | 4,000 | 4,000 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 50,000 | 121,500 | 123,657 | 295,157 |
| **Ending Cash Balance after Plan Payments** | 183 | 741 | 1,299 | 1,857 | 2,415 | 2,973 | 2,031 | 1,089 | 147 | 205 | 263 | 321 | 321 | 36,571 | 54,014 | 54,014 |

Footnotes

**Appendix E-2**
(Assumptions and Support for Projected Disposable Income)

      The Debtor is currently operating with 3 trucks.  Each truck is operated by a journeyman and an apprentice electrician.   Currently with 3 trucks, the Debtor is generating an average of $136,000 per month in gross revenue.  The Debtor currently has four apprentices in training and within the next fifteen months expects two of the apprentices to become journeymen and each will be provided a truck to operate.  It is projected that one new truck will be added in January of 2026.  A second new truck is projected to be added in January of 2027.  Revenues for each of the new trucks are projected to be $10,000 per month for the first two months of operation and $20,000 per month for months three through eight.

      The Debtor has estimated that the types of expenses will continue and has adjusted the expenses to reflect the costs of acquisition of two additional trucks, increased insurance costs and increases in salary for the elevated apprentices, and for inflation.

**<u>Appendix E-3</u>**
(Sources and Value of Funds and Assets for Distributions)

**<u>Appendix E-3</u>**
(Sources and Value of Funds and Assets for Distributions)

| Job status | Estimated Start Date | Job amount | Due amount |
|---|---|---|---|
| Scheduled | 11/26/2024 | $85,450.18 | $2,499.98 |
| Scheduled | 1/22/2025 | $17,446.08 | $10,847.71 |
| Scheduled | 4/2/2025 | $44,974.34 | $24,321.92 |
| Scheduled | 5/29/2025 | $5,304.65 | $1,591.40 |
| Scheduled | 9/24/2025 | $24,180.55 | $24,180.55 |
| Scheduled | 6/11/2025 | $34,634.55 | $15,595.49 |
| Scheduled | 6/26/2025 | $31,831.89 | $12,017.79 |
| Scheduled | 9/26/2025 | $18,954.96 | $18,954.96 |
| Scheduled | 8/26/2025 | $5,852.77 | $2,341.12 |
| Scheduled | 9/4/2025 | $3,451.64 | $3,451.64 |
| Scheduled | 10/15/2025 | $4,595.00 | $4,595.00 |
| Scheduled | 10/1/2025 | $1,684.64 | $1,684.64 |
| Scheduled | 10/3/2025 | $13,988.94 | $13,988.94 |
| Scheduled | 10/17/2025 | $1,164.60 | $1,164.60 |
| Scheduled | 10/6/2025 | $56,484.94 | $56,484.94 |
|  |  | $349,999.73 | $193,720.68 |

|  | Estimated Start Date | Job amount | Due amount |
|---|---|---|---|
| In Progress | 8/25/2024 | $232,168.58 | $62,637.58 |
| In Progress | 12/10/2024 | $177,931.63 | $72,610.56 |
| In Progress | 2/24/2025 | $87,600.35 | $27,429.90 |
| In Progress | 3/3/2025 | $73,668.05 | $26,266.13 |
| In Progress | 6/30/2025 | $71,198.85 | $69,867.37 |
| In Progress | 6/19/2025 | $14,942.48 | $5,977.00 |
| In Progress | 6/24/2025 | $58,932.61 | $33,234.63 |
| In Progress | 7/7/2025 | $17,183.96 | $5,155.19 |
| In Progress | 9/5/2025 | $5,554.28 | $5,554.28 |
| In Progress | 9/8/2025 | $67,383.76 | $54,196.76 |
| In Progress | 8/18/2025 | $49,743.13 | $49,743.13 |
| In Progress | 9/9/2025 | $13,360.47 | $4,008.15 |
|  |  | $869,668.15 | $416,680.68 |

| Job status | Estimated Start Date | Job amount | Due amount |
|---|---|---|---|
| Needs scheduling |  | $201,472.02 | $201,472.02 |

| | | |
|---|---:|---:|
| Needs scheduling | $121,561.38 | $121,561.38 |
| Needs scheduling | $2,000.00 | $1,800.00 |
| Needs scheduling | $15,256.14 | $10,679.30 |
| Needs scheduling | $35,620.21 | $35,620.21 |
| Needs scheduling | $675,336.16 | $675,336.16 |
| Needs scheduling | $23,877.39 | $23,877.39 |
| Needs scheduling | $51,798.13 | $51,798.13 |
| | $1,126,921.43 | $1,122,144.59 |

**Appendix E-4**

(Summary of Payments Under Plan)

| Creditor Name | Type of Claim | Claim Amount | Payment Amount | Payment Date(s) | Paid by Trustee (T) or Debtor (D) |
|---|---|---|---|---|---|
| Angela Shortall, Subchapter V Trustee | Administrative | $10,000.00 | $10,000 | September 2025 through May 2026 | D |
| Geri Lyons Chase, Attorney for Debtor | Administrative | $10,000.00 | $10,000 | January 2026 through May 2026 | D |
| Maurice | Class 1 – Supplier | $24,587.15 | $24,587.15 | June 2026 through December 2026 | D |
| Rexel | Class 1 - Supplier | $7,894.05 | $7,894.05 | June 2026 through December 2026 | D |
| Chesapeake Energy Solutions | Class 2 | $299,291.00 | $220,000.00 | December 2026 – August 2028 | D |
| General Unsecured | Class 3 | $25,657.00 | $25,657 | September 2028 – October 2028 | D |

**Appendix F**

(Assumed Executory Contracts and
Unexpired Leases)

| Name and Address of Party to Debtor's Executory Contract | Description of Executory Contract | Proposed Cure Amount and Anticipated Date of Cure Payment |
|---|---|---|
| Associated Property Management | Lease for Warehouse | Payments are current and will continue to be paid monthly as they come due. |